## Rives et al. v. City of Paducah et al.

Oct. 10, 1941.

C. C. Grassham for appellants.

Adrian H. Terrell for appellees.

OPINION OF THE COURT BY JUDGE TILFORD—Reversing.

By this proceeding for a writ of mandamus, the appellants, policemen and firemen of the City of Paducah, sought to compel the Board of Commissioners of that city to submit to a vote of the electorate an ordinance, which the board had rejected, fixing the number of officers and privates of the police and fire departments, and

establishing a minimum monthly compensation at $150 for those who had served one year or more.

Section 32 of Chapter 91 of the 1930 Acts, Kentucky Statutes, Section 3235dd-47, relating to referendums in cities of the second class operating under the "City Manager" form of government, provides in part:

"If a petition signed by a number of voters equal to at least twenty-five per centum (25%) of the total number of votes cast for both candidates for mayor at the last preceding regular election for mayor, stating the residence of each signer, and verified by affidavits of some one or more persons as to the signatures and residences, requesting the board of commissioners to pass an ordinance therein set forth—if such petition be presented to the board of commissioners, and if the ordinance therein requested to be passed be one that the board *has a legal right to pass*, then the board shall either pass such proposed ordinance without alteration, within ten days after such petition is filed, or submit the question of its passage to the voters of the city at the next regular election. At such election the question submitted shall be: 'Shall the proposed ordinance (briefly describing it), be passed?' If a majority of the votes cast upon said question be in the affirmative, the proposed ordinance shall be thereby passed, and shall become effective, as soon as the result is officially ascertained and declared. And such ordinance shall not be amended or repealed, except by the voters at a regular biennial city election." (Italics ours.)

The appellants alleged a strict compliance with the statute by the proponents of the ordinance, describing the petition presented to the board as:

"A petition containing the names of a number of voters equal to at least twenty-five per cent (25%) of the total number of votes cast for both candidates for mayor at the last preceding regular election for the mayor in the City of Paducah, Kentucky, together with the residence of each signer and verified by affidavits of one or more persons as to the signatures and residences of said signers, * * *."

However, the appellants failed to allege the number of votes actually cast for the mayoralty candidates at

the preceding election, or the number of voters who had actually signed the petition for a referendum, and it is this omission which appellees' counsel first urges in justification of the trial court's action in sustaining appellees' demurrer to the petition and dismissing it. He relies upon the opinion of this Court in the case of Burkart v. City of Newport et al., 265 Ky. 796, 97 S. W. (2d) 803, in which we held a petition containing a prayer for similar relief defective because of several omissions, including the omission referred to. In the case at bar the pleader followed the exact language of the statute and filed as an exhibit a copy of the petition addressed to the board. It is true that our opinion in the Burkart case, supra, is susceptible to the construction contended for, namely, that the omission referred to is fatal to the sufficiency of the petition in any case; but we do not regard that ruling as properly applicable where the petition follows the exact language of the statute, and to the extent that the Burkart case, supra, indicates a contrary view, it is overruled.

The remaining arguments advanced by appellees' counsel in support of the judgment appealed from, may be summarized as follows:

The ordinance was not such an ordinance as the board had "a legal right to pass," since it imposed expenditures for the current year in excess of appropriations, and hence, by the terms of the referendum statute, was excepted from its operation; the fixing of salaries of policemen and firemen in cities operating under the "City Manager" form of government is an administrative function, not subject to control by vote of the electorate; and the statute which provides that the Board may decrease the number of policemen and firemen from time to time as it may deem proper, vests that body with an exclusive right of which it cannot be deprived by a referendum vote. Underlying the weighty considerations of public policy, sharply called to our attention by counsel's argument, is the obvious inconsistency of permitting city residents who have adopted the "City Manager" form of government to override by popular vote the judgment of their elected representatives. However, these considerations are for the Legislature, our task being to give effect to its will, even though it authorizes the destruction of the fundamental concept underlying the "City Manager" form of government.

The first of the arguments outlined in the foregoing summary is predicated upon the fact that by the terms of Kentucky Statutes, Section 3235dd-47, the ordinance, if favorably voted upon by the electorate, would become effective "as soon as the result is officially ascertained and declared," from which the deduction is drawn that the city's expenditures for salaries during November and December, 1941, would be increased by $3,510 in violation of Sections 3235dd-37 and 3235dd-38, the former of which requires the preparation, adoption, and publication of an annual budget, and the latter, an annual appropriation ordinance based on the budget. Continuing, the latter section provides:

"The total amount of appropriations shall not exceed the estimated revenues of the city. Before the annual appropriation ordinance has been passed, the board of commissioners, with the recommendation in writing of the city manager, may make appropriations for the current department expenses, chargeable to the appropriations for the year when passed, to an amount sufficient to cover the necessary expenses of the various departments until the annual appropriation is in force. No other liabilities shall be incurred by any officer or employee of the city, except in accordance with the provisions of the annual appropriation ordinance, or under continuing contracts and loans authorized under the provisions of this charter. At any meeting after the passage of the appropriation ordinance, and after at least one week's notice, the board of commissioners may amend such ordinance, so as to authorize the transfer of unused appropriations for one purpose to another purpose, to appropriate available revenues not included in the annual budget."

It seems to us that the provisions of Subsection 47 of Section 3235dd relative to the effective date of an ordinance adopted by popular vote must necessarily be considered, where future municipal expenditures are involved, in the light of the other statutes referred to, and construed to establish merely the right of the beneficiary to receive and the duty of the municipality to provide, as expeditiously as it legally may, the money requisite. Thus the solution of the problem presented is that if the increased salaries for November and December cannot

be paid out of unused appropriations which may be transferred in the manner outlined in the concluding sentence of the statute last quoted, the ordinance will become operative as of the date it becomes possible for the city to pay the increased salaries through proper appropriation without violating the provisions of Subsections 37 and 38 of Section 3235dd, Kentucky Statutes.

In support of the claim that the fixing of salaries for policemen and firemen is an administrative and not a legislative function, and hence not one which the people may properly exercise, the Statutes heretofore quoted governing the financial management of the city are cited and the probable defeat of their objectives by popular vote emphasized. We are asked to consider cases from other states, attempting to distinguish between the natures of the functions exercised in fixing the remuneration of municipal employees, but it is conceded that the authorities are conflicting in their conclusions, and, to some extent, controlled by the statutes there in force. See the exhaustive annotation contained in 122 A. L. R. beginning at page 769. Speculation by us as to the niceties of the reasoning involved is rendered fruitless by express statutory enactments. The concluding paragraph of Subsection 35 of Section 3235dd, Kentucky Statutes, provides:

"The number of firemen, policemen, detectives and officers of the police and fire department shall be such as the board of commissioners may from time to time, ordain; and the said board of commissioners shall by ordinance, fix the salaries of the officers and employees and provide for their payment, and the payment of other expenses, of each of said departments."

Since Subsection 47 of Section 3235dd provides that the electorate, by popular vote, may compel the adoption of any ordinance which the board "has a legal right to pass," and the board by Subsection 35 is expressly directed "by ordinance" to fix the salaries of policemen and firemen, the conclusion is inescapable that the compulsory adoption of such an ordinance is properly the subject of a referendum.

The argument that the board is vested by statute with the uncontrollable right to reduce from time to time the number of policemen and firemen is based upon the

language of the concluding sentence of the fourth literary paragraph of Subsection 35 of Section 3235dd, Kentucky Statutes, reading:

> "Members of the police and fire departments otherwise qualified under this law shall hold their positions during good behavior, provided, however, that the provisions of this act shall not prevent the board from decreasing the number of firemen and policemen as the said board may from time to time deem proper, and provided, further, that in the event the board decreases the number of firemen or policemen, the youngest members in point of service in said police or fire departments shall be the first to be reduced and returned to the eligible list of either police or fire departments, thereto advance according to the rules and regulations of said departments."

This provision, among others, was added to Section 20 of the original 1930 Act (Chapter 91, Acts of 1930) by the 1932 amendment (Chapter 116, Acts of 1932). But the same amendment also contained the paragraph previously quoted expressly conferring upon the board the power to ordain the number of firemen and policemen and directing the board, by ordinance, to fix their salaries. In 1936 the Legislature further amended Section 3235dd-35, Kentucky Statutes (Chapter 72 Acts of 1936), but made no change in the provisions under consideration. It would seem that the purpose of the provision stressed by appellees' counsel was to create seniority rights in the employees who had served longest. In any event there is no real conflict between the two provisions or anything in the former sufficient to change our view that the Legislature, by the language employed in the latter, regarded the functions involved as legislative to be exercised by the adoption of ordinances. Wisely or unwisely, the majority of the electorate has been vested with the same legislative power as is possessed by the majority of the board.

Judgment reversed for proceedings consistent with this opinion.

The Whole Court sitting.