## Seaton, Mayor, et al. v. Lackey.

June 20, 1944.

Adrian H. Terrell and Wheeler & Shelbourne for appellants.

L. B. Alexander for appellee.

OPINION OF THE COURT BY VAN SANT, COMMISSIONER
—Reversing.

The City of Paducah operates under the City Manager form of government. KRS 89.590 provides, among other things, that an ordinance granting any franchise of the right to use or occupy the streets, highways, bridges, or public places of a city operating under the City Manager form of government shall, after its introduction and before its adoption, remain on file at least one week for public inspection in the form in which it shall be put upon its final passage, and shall not become effective until ten days after its passage. KRS 89.600 provides: "Referendum. If during the ten days next following the passage of any ordinance that cannot become effective within ten days after its passage, a petition signed by a number of voters equal to at least twenty-five percent of the total number of votes cast for both candidates for mayor at the last preceding regular election for mayor, stating the residence of each signer, and verified as to signatures and residences by the affidavits of one or more persons, is presented to the board of commissioners, protesting against the passage of the ordinance, the ordinance shall be suspended from going into effect and shall be reconsidered by the board of commissioners. If the ordinance is not then repealed, the board shall submit to the voters of the whole city, at a regular election, the following question: 'Shall the ordinance (briefly describing it) go into effect'? If a majority of the votes cast upon the question is in the negative, the ordinance shall not go into effect. If a majority of the votes cast upon the question is in the affirmative, the ordinance shall go into effect as soon as the result is officially ascertained and declared."

KRS 89.610 provides:

"Initiative. (1) If a petition signed by a number of voters equal to at least twenty-five percent of the total number of votes cast for both candidates for mayor at

the last preceding regular election for mayor, stating the residence of each signer, and verified by the affidavits of one or more persons as to the signatures and residences, requesting the board of commissioners to pass an ordinance therein set forth, is presented to the board of commissioners, and if the ordinance therein requested to be passed is one that the board has a legal right to pass, the board shall then either pass the proposed ordinance without alteration within ten days after the petition is filed, or submit the question of its passage to the voters of the city at the next regular election. At such election the question submitted shall be: 'Shall the proposed ordinance (briefly describing it) be passed'? If a majority of the votes cast upon the question is in the affirmative, the proposed ordinance shall be thereby passed, and shall become effective as soon as the result is officially ascertained and declared, and the ordinance shall not be amended or repealed except by the voters at a regular biennial city election. Any number of proposed ordinances requested by petition as above provided for may be voted on at any election.

"(2) The board of commissioners may submit the question of repeal or amendment of any such ordinance to the voters at any succeeding regular city election, and if a majority of the votes cast on the question is in favor of the repeal or amendment, the ordinance shall be thereby repealed or amended as the case may be."

On the 6th day of April, 1936, the city sold the franchise right to operate motor busses for transportation in the city for a ten-year period. That franchise is being operated by the owner thereof, and will expire on April 6, 1946. KRS 96.010 recites:

"Sale of public utility franchises by cities. (1) At least eighteen months before the expiration of any franchise acquired under or prior to the present Constitution, the legislative body of each city shall provide for the sale of a new franchise to the highest and best bidder on terms that are fair and reasonable to the city, to the purchaser of the franchise and to the patrons of the utility. The terms shall specify the quality of service to be rendered and, in cities of the first class, the price that shall be charged for the service.

"(2) If there is no public necessity for the kind of public utility in question and if the city desires to discontinue entirely the kind of service in question, or if, in

the case of cities other than those of the first class, the city owns or desires to own and operate a municipal plant to render the required service, this section shall not apply.''

Pursuant to KRS 96.010, supra, there was introduced for passage at a regular meeting of the Board of Commissioners of the city, on January 25, 1944, an ordinance entitled ''Motor Bus Franchise Ordinance No. 2'', directing the sale of a franchise authorizing the purchaser to maintain and operate motor passenger busses over and upon the streets and public ways of the city for a period of ten years commencing upon the expiration of the existing franchise. The Board of Commissioners ordered the ordinance to lie over for one week. At its regular meeting held on February 1, 1944, one week after it was introduced, the ordinance was adopted by the affirmative vote of a majority of the Board. On February 11, 1944, a petition, as provided for in KRS 89.600, was filed with the city clerk, signed by voters equal in number to at least 25% of the total number of votes cast for both candidates for Mayor at the last preceding election, protesting the passage of the ordinance. The Board refused to suspend the effective date of the ordinance, or to reconsider its passage. Thereupon, an action was filed in the McCracken Circuit Court by Pierce E. Lackey and Gene Peak against the Mayor and other members of the Board, seeking a mandatory injunction to compel the Board to accept and file the petition, and to repeal the ordinance or certify it to be voted upon at the next regular election to be held in November, 1944. The lower Court dismissed the petition, because it was not filed within the time allowed under that section of the Statutes. That decision was affirmed on appeal to this Court. The opinion of the Court does not appear in the published volumes; but the basis of the decision was that, since the petition must be filed within ten days next following the passage of the ordinance, the day on which the ordinance was passed must be counted in the calculation, and, when so counted, the petition was filed one day too late. The Court, not having jurisdiction of the action, did not consider the merits of the case. After that decision was rendered, a petition drawn in compliance with KRS 89.610, the initiative statute, was filed with the Board, requesting the Board to pass an ordinance providing for the repeal of Motor Bus Fran-

chise Ordinance No. 2. The Board of Commissioners refused to comply with the demand of the petitioners, either by adopting the ordinance or by referring the question to the voters at the next general election. The franchise provided for in Motor Bus Franchise No. 2 was advertised for sale. On the morning the sale was to have been held, appellee, Pierce E. Lackey, filed a petition in the McCracken Circuit Court seeking an injunction permanently restraining the City Manager from offering for sale the bus franchise, and requiring the Board of Commissioners to repeal Motor Bus Franchise Ordinance No. 2 within ten days from the date of the judgment, or to certify the question of its repeal to the electorate at the next regular election. The lower Court granted the relief prayed for, from which judgment this appeal has been prosecuted.

Although initiative and referendum provisions widely differ in their terminology, it is the general rule that they are applicable only to acts which are legislative in character, and not to those dealing with administrative or executive matters. In Denman v. Quin, 116 S.W. 2d 783, 786, the Texas Civil Court of Appeals said: "It is obvious that ordinances intended by the electorate to be subject to referendum are those which are legislative in character, as distinguished from those of an administrative or executive nature; * * *. An ordinance originating or enacting a permanent law or laying down a rule of conduct or course of policy for the guidance of the citizens or their officers and agents is purely legislative in character, and referable, but an ordinance which simply puts into execution previously-declared policies, or previously-enacted laws, is administrative or executive in character, and not referable."

In Keigley v. Bench, 97 Utah 69, 89 P. 2d 480, 122 A.L.R. 756, it was held that the right to initiative and referendum exists only in respect to legislative acts of a city, not to administrative acts. It was therein held that the determinative test of whether an ordinance could be submitted to referendum is, whether the ordinance creates a legislative change or merely an administrative change, and that distinction is to be based upon the determination of the question as to whether the ordinance in consideration makes a new law or merely executes one already in existence. In Monahan v. Funk, 137 Or. 580, 3 P. 2d 778, 779, recognizing the rule that local initiative and referendum jurisdiction is applicable

only to ordinances of legislative character, the Court said: "Acts which are to be deemed as acts of administration and classed among those governmental powers properly assigned to the executive department are those which are necessary to be done to carry out legislative policies and purposes already declared, either by the legislative municipal body, or such as devolved upon it by the organic law of its existence. The form of the act is not determinative; that is, an ordinance may be legislative in character or it may be administrative." To the same effect is Whitbeck v. Funk, 140 Or. 70, 12 P. 2d 1019.

In 37 Am. Jur., Sec. 209, pp. 845 and 846, it is said: "The right to a referendum on a measure passed by a municipal council is ordinarily confined to those acts of the council which are in the exercise of its legislative power and does not extend to administrative or executive acts, even though such acts are exercised by resolution or ordinance. The reason for this rule is that to allow a referendum to be invoked to annul or delay executive conduct would destroy the efficiency necessary to successful administration of the business affairs of a municipality. Generally, an ordinance originating or enacting a permanent law or laying down a rule of conduct or course of policy for the guidance of citizens or their officers or agents is purely legislative in character and referable, while an ordinance which simply puts into execution previously declared policies or previously enacted laws is administrative or executive in character and not referable."

Many other authorities could be cited in support of the principles enunciated above. It is often very difficult to determine whether the exercise of a power concerning a given subject matter is legislative in its character or administrative; but, from the authorities in general, we may state the rule to be that the power to be exercised is legislative in its nature if it prescribes a new policy or plan; whereas, it is administrative in its nature if it merely pursues a plan already adopted by the legislative body itself, or some power superior to it. We are, therefore, of the opinion that the provisions of KRS 89.600 and KRS 89.610 are applicable only to ordinances which may be adopted by the legislative board of a city in the exercise of a legislative discretion, and not to those which must be enacted pursuant to a plan prescribed by the Legislature.

If the ordinance under consideration were for the original creation of the utility it prescribes, its enactment would be in the exercise of a legislative discretion. But, even in that event, the right to referendum and initiative is doubtful under Section 163 of the Constitution (which has been held applicable to motor transportation utilities in People's Transit Co. v. Louisville R. Co., 220 Ky. 728, 295 S. W. 1055). That section vests the discretionary power of granting such franchises solely in the legislative body or board of the city; and we have held it applicable to public utilities only upon the granting of the initial franchise. City of Paris v. Kentucky Utilities Co., 280 Ky. 492, 133 S.W. 2d 559. In that opinion, we held Section 96.010 to be valid and mandatory in its direction to the legislative body of the city to offer a franchise before the expiration of an existing franchise performing the same service. Since such action is mandatory, the adoption of such an ordinance does not lie within the legislative discretion of the board. It is purely administrative, in compliance with the direction of the General Assembly.

Consonant with this reason, we are constrained to hold, although the subject of granting a franchise otherwise might be termed to be legislative, that since the city is required to sell a new franchise before the expiration of the old, the adoption of an ordinance providing for the sale of a franchise under that section of the Statutes is not subject either to initiative or referendum proceedings.

The judgment is reversed, for proceedings consistent with this opinion.

Whole Court sitting.